THE WOLVERTON.[1]

PURNELL *v.* THE WOLVERTON.

(*Circuit Court, E. D. Pennsylvania.* April 22, 1886.)

1. COLLISION—TUG AND TOW.
    The tug Wolverton, with a tow, was on her way from Brooklyn to Jersey City. She was coming down the East river, keeping as close to the New York docks as she could go with safety. The tug Packer, with libelant's barge in tow, was coming up, and, when several lengths from the Wolverton, signaled her intention to go to the left, and, without waiting for an answer, changed her course, and attempted to cross that of the Wolverton. *Held* that, as the Wolverton was as near the docks as she could safely go, it was the duty of the Packer to keep outside of her, and that, in crossing her course, she took the risk of injurious consequences.

2. EVIDENCE—WEIGHT—RECORD OF ANOTHER COURT.
    The record and opinion of another court will not be given authoritative weight in considering the evidence presented in a case, or against any conclusion of fact fairly deducible therefrom.

In Admiralty.
*M. P. Henry* and *Edward McCarthy,* for libelant.
*Alfred Driver* and *J. Warren Coalston,* for respondents.

McKENNAN, J. The libelant rests his case upon the following material allegations of fact: That the respondent started from Robert's Store, on the Brooklyn side of the East river, having in tow the barge Atlanta, and intending to proceed to the Erie Railroad dock, on the New Jersey side of the North River, rounding the Battery in her course; that she steamed diagonally down and across the East river, quartering the tide, which was running ebb, about four miles an hour; that the tug Packer, having the libelant in tow, rounded the Battery, passing from the North river into the East river, keeping in towards the piers on the New York side, so as to take advantage of the slack-water there; that she whistled to the respondent not to cross the course of the libelant, and that the respondent did not notice the signal, or reply to it, but pointed her helm so as to go inside of the libelant, thus crossing her bows; that the respondent passed safely,

[1] Reported by C. B. Taylor, Esq., of the Philadelphia bar.

but did not succeed in getting her tow past without collision, the latter striking the libelant, and inflicting the injury complained of.

On the contrary, the respondent alleges that, having started with his tow from Brooklyn as stated, he proceeded on his course, running across the river, and keeping into the docks on the New York side, as he came down the river; that when about opposite Pier 1, East river, and proceeding on his course, and as near the New York docks as he could go safely, the Packer, with libelant's barge in tow, which was proceeding up the East river towards Brooklyn, blew two whistles, indicating thereby that she desired to go to the left, or on the inside of the respondent, between him and the New York dock; that when the whistles were sounded the tugs were three or four lengths apart, and there was no danger of collision, as they were moving in opposite directions, port to port, the respondent then being on the inside nearest the New York shore; that immediately on sounding her whistle, without waiting a reply, the Packer put her wheel to starboard, changed her course, and attempted to cross the respondent's bow, and run between her and the New York piers; and that this change of course caused the collision.

It is apparent that the libelant, to obtain a decree in her favor, must support her hypothesis by a preponderance of evidence. The evidence is conflicting, and, upon a careful consideration of it all, I am unable to find that its weight is in favor of the libelant's allegation and theory. On the contrary, I think it preponderates in favor of the respondent. The Wolverton was rightfully pursuing a course as near to the dock as she could go, and it was the duty of the Packer to keep outside of her, however desirable it may have been to obtain the benefit of the slack-water near the dock. In crossing the course of the Wolverton, as I think she did, to obtain this advantage, she took the risk of injurious consequences, and the blame therefore is upon her. The record and opinion of the district court of New York in the case of *Castle* v. *The Packer, ante,* 156, have been furnished to me, and have been examined. While I have great respect for the opinion of the learned judge of that court, I cannot give it authoritative weight in the consideration of the evidence presented in the case before this court, or against any conclusions of fact which are fairly deducible from it.

The bill is dismissed, with costs.